## WHITAKER *against* WILLIAMS.

An assignment under the statute of 1828 against fraudulent conveyances, if not executed in the manner therein prescribed, is utterly void as against creditors of the assignor; but the want of any of the requisites prescribed by that act, would not invalidate it, nor preclude a court of equity from re-forming it, as against the assignor himself.

Though where the owner of property stands by, and knowingly suffers a stranger to sell it, in his own name and as his own property, without objection; and another person is thereby deluded into the purchase of it; the owner, by a just and salutary principle, is estopped to claim title afterwards to such property; yet to render that principle applicable, the person to be estopped must have had knowledge of his rights; and it is an essential part of the principle itself, that his conduct must have superinduced the action of the purchaser.

Therefore, where *A* made an assignment of property for the benefit of his creditors under the statute of 1828, which was defective in an essential requisite; and the assignee, by order of the court of probate, and with the assent and approbation of *A*, sold, at public auction, such property to *B*; but the assent and approbation of *A* were given under an erroneous view of his rights, the facts were equally well known to him and to *B*, and *B* was not thereby misled, or induced to act differently from what he otherwise would have done; *C* having afterwards attached the property as still the property of *A*, it was held, that under these circumstances, and as the title claimed by *B*, was derived, not from *A*, but from the assignee alone, the conduct of *A* regarding the sale to *B*, did not, by estoppel *in pais*, validate such sale, or vest a title in *B*; consequently, *C's* attachment would hold the property. [Two judges dissenting.]

THIS was *scire-facias* in a process of foreign attachment, demanding of the present defendant the amount of a judgment of the county court, rendered in that process, in the plaintiff's favour against *George W. Clark*. The defendant

pleaded, that he was not the debtor of *Clark;* on which issue was joined. On this issue, the cause was tried, at *Norwich, March* term, 1849.

The indebtedness which the plaintiff claimed as due from the defendant to *Clark,* consisted of a judgment of the superior court, rendered at its term in *March,* 1846, in a suit brought in the name of *Clark* against the defendant, for mutilating the model of a propeller; the sums for which such judgment was rendered, being 75 dollars, damages, and 40 dollars, 38 cents, costs. The circumstances under which that suit was instituted and prosecuted, are correctly stated in a bill in chancery, brought by *Edwin Gavit* and others, against *Horace Whitaker,* (the present plaintiff,) *Jedediah Williams,* (the present defendant,) and said *G. W. Clark,* and determined, in this court, on a writ of error, *July* term, 1847. See *Whitaker* & al. v. *Gavit* & al. 18 *Conn. R.* 522, 3. The present *scire-facias* is the one mentioned in that case, (*p.* 523.) as then pending. It was agreed, that after the service of this *scire-facias,* the defendant had, pursuant to the statute, (*p.* 117, 18. § 234.) given notice to *Gavit* and others of the pendency of such suit against him, and requiring them, as they were the persons who claimed to be the owners and entitled to the benefit of said judgment, to defend him in this suit; and *Gavit* and others having given security, as by law required, had assumed upon themselves the defence of this cause.

Upon the facts stated in the bill of *Gavit* & al. v. *Whitaker* & al., which were so found to be true, the court decided, that the plaintiff was not entitled to recover in this suit; and he thereupon moved for a new trial.

*E. Perkins,* in support of the motion, contended, 1. That *Gavit* and others, the real defendants, had no *legal* title to the debt sought to be recovered by this *scire-facias;* the legal title being in *G. W. Clark,* in whose name the judgment was recovered.

2. That they had no *equitable* title. *Whitaker* & al. v. *Gavit* & al. in err. 18 *Conn. R.* 522. The judgment in that case is between the same parties as in this, on the same facts and concerning the same subject matter, and by a court having conclusive jurisdiction over both the subject matter

and the parties. That judgment is an estoppel to any further litigation between these parties on the subject matter involved therein. The record of the bill and decree of the superior court, in that case, constitutes the special finding of the facts in this. All that the bill alleged, in that case, was, that the plaintiffs had an equitable title to this judgment. The only question decided, was, that they had no such title as against this plaintiff.

3. That there was no error in the former judgment between these parties. The real defendants pretend no title, except one derived from *G. M. Eaton,* the trustee, substituted, by the court of probate, for *E. Chappell,* who had declined. But no title was conveyed to the trustee, and the court of probate had no jurisdiction over the matter, because there was no assignment of the property in question, *in writing.* *Stat.* 363. § 66. The assignment being by parol and in trust for creditors, is, under our statute, as against the creditors of the assignor, to " be deemed and adjudged fraudulent and utterly void." The plaintiff was a creditor of *Clark,* at the time of the assignment. *Clark's* assent to and approbation of the sale, by *Eaton,* as such trustee, and the purchase by *Gavit* and others, whatever may be the effect thereof, as against *Clark* and *Eaton,* cannot affect the creditors of *Clark.* His assent to and approbation of the acts of *Eaton,* under this fraudulent conveyance, are but a persistence in the original fraud.

*Strong* and *Rockwell,* contra, contended, 1. That the purchase of the claim against *Williams* for the mutilation of the model, was a valid purchase, so far as *G. W. Clark* was concerned, and binding on him. In the first place, the court find, that *Clark,* in his original assignment for the benefit of his creditors, designed and intended that this claim should be included and conveyed to the trustee. Secondly, it is expressly found, that the sale at auction by the trustee, was made, not only by order of the court of probate, but *with the assent and approbation of Clark.* Thirdly, *Clark,* under these circumstances, could not deny the right of the purchasers, or set up any claim in himself, or controvert the validity of the assignment ; but would be forever estopped from so doing. *Brown* v. *Wheeler,* **17** *Conn. R.* 345. 353, 4.

*Roe* v. *Jerome*, 18 *Conn. R.* 138, 153. *Bushnell* v. *Church*, 15 *Conn. R.* 419. *Pickard* v. *Sears*, 6 *Adol. & Ell.* 469. (33 *E. C. L.* 115.) *Gregg* v. *Wells*, 10 *Adol. & Ell.* 90. (37 *E. C. L.* 54. 58 ) *Welland Canal Company* v. *Hathaway*, 8 *Wend.* 480. 483. *Davison* v. *Franklin*, 1 *B. & Adol.* 142. (20 *E. C. L.* 363.)

2. That *Whitaker*, the present plaintiff, stands on no higher ground than *Clark;* and if the assignment is good against *Clark*, it is equally valid against *Whitaker*. He had knowledge of the whole transaction. And not only this, but it also appears, that there was an unlawful purpose—an "an unjust design"—on his part. (*a*) To allow him to succeed now, would operate as a gross fraud upon the purchasers of this claim, who, after purchasing it and prosecuting it at great expence, would be deprived of the benefit of it, by the man who had contested their claim, (*b*) and who, after it is established, seeks to appropriate the fruits of the judgment to an old debt of *Clark* to him.

STORRS, J. The question presented in this case, is, whether the plaintiff, as against *Gavit* and his associates, is equitably entitled to the money due on the judgment recovered in favour of *Clark* against the defendant.

This court decided, in *Whitaker* v. *Gavit* & al. 18 *Conn. R.* 522. that, as the claim for which that judgment was rendered, was not in any manner described in the assignment made by *Clark* to *Chappel*, then in question, (which is the same assignment mentioned in the record in evidence in this suit,) although it was intended and agreed by *Clark*, that it should be included therein and conveyed to the trustee, and

(*a*) See 18 *Conn. R.* 523. where the statement is *abridged* from the record; the purposes of that case not requiring a fuller statement. In the bill then before the court—the averments of which were found to be true—it was averred, that *Whitaker* prayed out his writ of *scire-facias*, with the *unjust design* thereby to deprive the purchasers of the claim of the benefit of the judgment, which they had recovered, in the name of *Clark*, against *Williams*.

(*b*) Here again allusion is made to a fact stated in the bill of *Gavit* & al. v. *Whitaker* & al., which does not appear in the concise statement in 18 *Conn. R.* 522. 3. *viz.* that *Whitaker* had united with and assisted *Williams*, in the suit brought by *Gavit* and others, in the name of *Clark*, against him, *Williams*.

New-London,
July, 1849.

Whitaker
v.
Williams.

was omitted so to be embraced, by mistake of the drafts-man, such claim could not in equity, as to the creditors of *Clark*, of whom the defendant in that suit and the plaintiff in this was one, be deemed to be a conveyance to the trustee ; that the court of probate, therefore, had no jurisdiction over it ; and that no equitable title to the claim passed thereby to the trustee, nor consequently, to *Gavit* and company, the plaintiffs in that suit, who had purchased it from him.   We held, that as the statute of 1828 *against fraudulent conveyances*, expressly required that assignment, in order to be valid against them, to be in writing and lodged for record in the probate office, the ordinary principles which are adopted in chancery, as to the correction and reformation of mistakes in instruments, did not apply to the case ; and on that ground, refused to reform that assignment according to the intention of *Clark*, or to enjoin the plaintiff in the present case from prosecuting this suit.

That act, in terms, makes all assignments of property contemplated by it, if not executed in the manner therein prescribed, fraudulent and utterly void as against the creditors of the assignor.   It does not, however, affect the validity of conveyances as between the parties to them, but leaves them, in this respect, as they were at the common law : and therefore, such conveyances, notwithstanding they should not be in writing, or want any of the other requisites prescribed by that act, would not be invalidated by it, as against the assignor.   And if, as to him, it should become necessary to reform the instrument of conveyance in consequence of a mistake attending its execution, the ordinary principles on which such relief is granted, by courts of equity, would apply.   But such relief would not be granted against his creditors, for the obvious reason, that as to them, the instrument is rendered fraudulent and void.   They would claim against, and not under, the instrument.

If therefore the only title of *Gavit* and company to the claim in question, is derived from a sale thereof from the trustee of *Clark* under the assignment, although it might be good as to *Clark*, it would be void as to the plaintiff, who claims here as his creditor, by an attachment of it ; because, as against him, the trustee acquired no title to the claim, by the assignment.

There was no evidence, on the trial of the cause, to prove, nor is it claimed by the counsel for the defendant, that there was any direct transfer made, or attempted to be made, by *Clark* to *Gavit* and company, of the claim in question against the defendant. If, independent of the assignment, there had been such a transfer, it would have vested in *Gavit* and company a valid title to the claim, not only as against *Clark*, but also as to the plaintiff, although the transfer of it were not in writing, if the nature of the property was such that it could be conveyed without writing ; because, as it would not be a conveyance in trust, the statute of 1828 would not, neither would the common law, require a written conveyance. The evidence, however, shews only that *Clark* assented to and approved of the sale of the claim made by the trustee to *Gavit* and company, which was professedly made by the trustee only, under and by virtue of the power, authority and interest vested in him as such trustee, and by virtue of the orders of the court of probate, authorizing him thereto ; and that the suit was instituted, by *Gavit* and company, as the owners of the claim, against *Williams*, for the recovery of the claim, in the name of *Clark*, (in whose name only the suit could be brought,) with *Clark's* knowledge and consent.

The defendant, however, claims, that, conceding that no title to the claim passed to *Gavit* and company, through the assignment, or by reason of any direct transfer of it to him by *Clark*, the assent and approbation of *Clark* to the sale of it by the trustee, to *Gavit* and company, and his consent to the suit brought to recover it, operated as an estoppel against *Clark*, and had the effect of precluding him from disputing the validity of the sale, or denying that the trustee had power to transfer it ; and that the plaintiff, not having attached it until after such sale, is in no better condition than *Clark* to dispute the sale. It is insisted, that the case is within the principle on which a sale of property is held valid against the true owner, where he stands by and knowingly suffers a stranger to sell it, in his own name, as his own property, without objection ; where the silence of the owner and concealment of his title are deemed equivalent to an assertion, that he has no claim to the property ; and it would be a fraud on the purchaser, to permit the owner to

delude him into the purchase, and afterwards defeat the right which the purchaser supposed he had acquired under it. We have often had occasion to recognize and apply this principle as one of a most just and salutary character. *Brown* v. *Wheeler*, 17 *Conn. R.* 345. *Kinney* v. *Farnsworth, Id.* 355. *Roe* v. *Jerome*, 18 *Conn. R.* 138. *Noyes* v. *Ward*, 19 *Conn. R.* 250. *Greenl. Ev.* 267. and cases cited.

But we think that it is not applicable to the case now before us. The doctrine that one shall not be permitted to retract representations, in which is included conduct, by which he has induced another to adopt a particular course of action, supposes, and is to be understood with, the qualification, which is indeed a part of the principle itself, that the one by whom such representations were made, had a knowledge of his rights. In laying down this qualification, we speak of the principle generally, and would not be understood to say, that there may not be cases where there is such culpability on the part of the person making such representations, or such particular circumstances or consequences attending them, that he would not be permitted to set up the want of such knowledge. But the present case falls within no such exception.

The principle which constitutes such representations an estoppel *in pais*, also requires that the action of the other party took place on the strength of them, and was superinduced by them ; because otherwise, he could not be misled or injured in consequence of them.

If, in the present case, *Clark*, being aware that *Eaton* had acquired no right or title to the claim in question, by the assignment or otherwise, by his declarations, or by his assent to a sale of it to *Gavit* and company, induced the latter to believe that the title to the claim was in *Eaton*, and to purchase it of him under that belief, we should have no doubt that it would not be competent for *Clark*, or the plaintiff, claiming by any subsequent title under him, to deny the validity of such sale ; but the evidence shows no such state of facts. From the bill and decree, which constituted the only evidence on the trial, the allegations in which bill are found true in the decree, it appears, that the trustee of *Clark* claimed no power, authority or interest in or respecting said claim, excepting such as was vested, or supposed to be vested,

in him, by the assignment executed by *Clark*, and the cir-
cumstances attending it, and the orders of the court of pro-
bate exercising its jurisdiction over that assignment and the
property conveyed by it, under the statute which has been
adverted to ; that it was by virtue of such authority and
interest alone, that said trustee intended or professed to sell
said claim to *Gavit* and company ; that the latter, when such
sale was made, had knowledge of the provisions of the as-
signment, and of all the proceedings under it in the court of
probate, and also knew that the sale was made, and intended
to be made, solely by virtue of the authority and interest
derived by the trustee from them ; that, in their purchase,
they looked to no other source of title ; and that, so far from
believing that the title to said claim was in *Clark*, at the
time of such sale, they believed that his title to it was di-
vested by the assignment, and vested in the trustee ; and
that the latter only had authority to dispose of it. The only
title of *Gavit* and company alleged in that bill, was one
derived, not directly from *Clark*, but from *Eaton*, as his
trustee under the assignment ; and the ground set up in the
bill for establishing that title, was, that it was the intention
to have the claim embraced in the assignment, and its omis-
sion by mistake, on which it was claimed that the instrument
should be reformed according to such intention. The cor-
rection of that mistake would, of course, have been made,
on the ground that the title in equity was in the trustee, and
not in *Clark*. It did not occur to the counsel for the plain-
tiffs in that case, to set up a title directly from *Clark*, or that
his conduct operated as an estoppel against him, or the
plaintiff in this case, by which either of them was precluded
from asserting that the title to the claim was in *Clark*, when
it was sold by the trustee. Indeed, it is alleged in that bill,
after stating the sale by the trustee, by virtue of the authority
and interest vested in him, by the assignment and the orders
of the court of probate, and the purchase by the defendants,
that the plaintiffs in that case, (*Gavit* and company,) " thus
became the purchasers of said claim, and in equity entitled
to have and receive the damages for which said *Williams*
was liable to said *Clark*" thereon—unless, from the manner
in which it is also, in connexion with that statement, alleged,
that the sale was with the assent and approbation of *Clark*,

New-London,
July, 1849.

Whitaker
v.
Williams.

the construction of the whole averment should be, that such assent and approbation constitute in part the title which they claimed.    We do not, however, think, from the manner in which the allegation of such assent and approbation was introduced, that it was designed, or should be construed to mean, that the title of those plaintiffs was founded upon it, or strengthened by it.    Such a construction would be opposed to the general frame and character of the bill, and would place the title of the plaintiffs therein to the claim on a very different ground from the one intended to be set up in it : and indeed, if it is to be considered as a bill seeking relief on the ground of declarations or conduct on the part of *Clark*, which created an estoppel against the assertion of his title, it would plainly be insufficient.    For, although it alleges such assent and approbation by him, it omits to state, either that the title to the claim, at the time of the sale, was in *Clark ;* or that he knew or supposed that it was in himself ; or that the plaintiffs were induced to believe, by his said conduct, that the trustee had a title to said claim, or was authorized by *Clark*, otherwise than through the assignment, to dispose of it ; or indeed, that they did so believe.    If, on that bill, the court in its finding had negatived the allegations as to the intention with which the assignment was executed, and the mistake of the draftsman in omitting to insert the claim in it, and had found the other allegations to be true, including the assent and approbation of *Clark* to the sale, as stated in the bill, it would hardly be claimed, that any ground for relief would be furnished by such a finding.    Nor would relief have been granted on that bill, if the court had found the further facts, that *Clark*, when said sale took place, knew that the title to the claim was in him, and by his said conduct induced the purchasers to believe that it was in the trustee ; for the obvious reason that those material facts were not alleged in the bill.    For the same reason, the decree is not evidence of those facts.    The existence of them, consequently, is not proved.

This then is a case, where, whatever may have been the representations of *Clark*, they must be deemed to have been made by him under an erroneous view of his rights, or at least without any fraudulent or improper motive ; and where, moreover, the facts, as they really existed, were known

equally to him and to the purchasers of the claim in question; and the latter have not been misled, or induced by those representations to act differently in any respect from what they otherwise would have done.  Nor can it justly be claimed, that the plaintiff in this case has done anything which destroys or impairs his right to the money due on the claim in question, as a creditor of *Clark*.  The circumstance that he united with and assisted the defendant, in defending the suit brought against the latter, in the name of *Clark*, has no such effect; nor does it appear, that the money received by the trustee on the sale of the claim, or any part thereof, has ever been paid by him to or received by the plaintiff, or any of the other creditors of *Clark*.  This is a very important fact in the case.  That it cannot be recovered of said trustee, by those creditors, or for their benefit, as trust funds, received under the assignment, results from our decision in the case of *Whitaker* v. *Gavit* and others.  Under these circumstances, to hold that what was done by *Clark*, when the claim in question was attempted to be sold by the trustee, precludes the enquiry whether the former was the owner of it, would, in our judgment, be a misapplication of the principle on which estoppels *in pais* are deemed to be created by the representations or conduct of parties.  No case has been found which carries the doctrine on that subject to such an extravagant length ; and to do so it this case, would give to the defendants an advantage from what was done by *Clark*, which, so far as it appears, they never expected, and which, on principles of justice, they are not entitled to.

A new trial is therefore advised.

In this opinion CHURCH, Ch. J., and HINMAN, J., concurred.

ELLSWORTH, J.  The result to which a majority of the court have come, in this case, seems to me, to be exceedingly unjust towards *Gavit* and others, the real defendants.  I think a different view may consistently be taken, more satisfactory and more in accordance with principles and justice and equity.  The defendants have confessedly bought the debt in question fairly, and have paid the price agreed ; and this has been done *with the consent and active coöperation of Clark*, who owned it.  If, after this, *Clark*, or any one pos-

*New-London,*
*July, 1849.*

Whitaker
*v.*
Williams.

sessing his rights only, can wrest this debt from the pur-
chasers, it must be for reasons which I cannot discover.

This being a writ of *scire-facias*, to obtain a debt due to
*G. W. Clark*, by process of foreign attachment, it is obvious
that the plaintiff cannot recover, unless he has acquired a
good legal and equitable title to the debt.   *Gavit* & al. claim,
that *they* are purchasers of the debt, and can retain it against
*Clark* and his representative, *Whitaker*.  If they have the
right, there is no doubt they can, in the name of the nominal
defendant, prevent the recovery.  *The Hartford Bank* v.
*Barber*, 9 *Conn. R.* 407.

When this case was before us, on a former occasion, (18
*Conn. R.* 522.,) the court decided, that the assignment of
*Clark* could not be amended or enlarged so as to include
this claim : and as it was confessedly not in the writing, the
court held, they could not place it there, nor treat the claim
as if it were there.  That case did not settle the question
now raised for decision : indeed, at the close of the opinion
there given, it is said, that if *Gavit* & al. are entitled to the
debt, they have relief in this action at law.  In consequence
of that remark, perhaps, the case comes before us in the
present shape.

It must be agreed, that at the time, when *Eaton*, the trustee,
sold the property which he held as assignee, *Clark* could
have sold the claim on *Williams* to the defendants; for as
it was not in the assignment, (though he intended and be-
lieved it was,) he had the entire interest in and controul over
it, as much as if he had made no assignment at all.  He
could sell this claim as well as any thing else he had not
assigned, provided he did it *bona fide* and for a valuable con-
sideration.  After that, no creditor of his could take it from
the purchaser, because no creditor could acquire a right
which *Clark* did not possess himself.  I know it was said in
the argument, that a sale by *Clark*, if made cotemporane-
ously with the general sale by *Eaton*, would be void against
the creditors of *Clark*, because of the statute of 1828.  But
the objection is unintelligible and misapplied.  Title to the
claim does not come *through Eaton*, nor through the *assign-
ment ;* and therefore, that assignment has nothing to do with
the claim, and cannot defeat a fair *subsequent* or *cotempora-
neous sale.*

The single question is, did *Gavit* & al. acquire a right to
the claim as against *Clark*, by what took place on that occa-
sion? The counsel for *Whitaker* gave up this point, as too
plain for .controversy, and only insisted, that the sale was
void as to *Clark's* creditors, by reason of the statute of 1828;
which latter ground, I have shown, has no existence in the
premises. The court, if I understand them aright, place
their opinion upon the want of a sale by *Clark;* and consider
the former ground as untenable, and inappropriate. To the
true point, then, let us turn our attention.

It is agreed, that the real defendants bought the claim at
public action, and paid the money, which has gone towards
the indebtedness of *Clark;* that this was done with the *con-
sent* and *approbation* of *Clark;* that afterwards, with his
*assent* and *understanding*, in order that the claim, (which
was then very imperfect,) might be brought to maturity, the
defendants, in the name of *Clark*, brought a suit and recov-
ered judgment, at an expense exceeding the amount of the
damages recovered; of which *Whitaker* had notice. Here
now, we have a sale actually made, by the desire and coöp-
eration of the owner, and afterwards, the purchasers, relying
on their title, bestowing their labour and money to make the
purchased property of value. If this does not vest the orig-
inal claim in the real defendants, and forever estop *Clark*, I
have studied the principles of law and justice to no purpose.
What if *Clark* did suppose the claim was in the assignment,
while in fact it is not; he certainly meant to have it sold;
and it was sold and the money applied. The fact that *Clark*
mistook the extent of the assignment, is nothing to the pur-
pose. The defendants are not to be prejudiced by *his* mis-
apprehension. They are innocent of any error, and have
confided where they might with propriety place confidence,
and where *Clark* cannot be permitted to question their act.
Nor is the mistake of *Clark* of the least moment to him.
*He meant to have the claim sold and transferred:* it was sold,
and he had the benefit of it. Now, after this, to permit
him to come in, and take this claim and the costs too, to
which latter he never had the shadow of a right, is too fla-
grantly unjust to be tolerated in a court of justice, one
moment.

The doctrine of estoppel *in pais*, growing out of the dec-

*New-London,*
July, 1849.

Whitaker
*v.*
Williams.

larations and conduct of persons in peculiar circumstances, or rather, growing out of the application of principles of justice, and honour and sound morality, to the conduct of mankind, has recently been too fully discussed and recognized in the cases of *Roe* v. *Jerome* and *Middletown Bank* v. *Jerome,* in 18 *Conn. R.,* and in *East-Haddam Bank* v. *Shailor,* of the present term, *(ante,* p. 18,)to be enlarged upon at this time.    Those cases and the numerous ones referred to in them, fully sustain the principle so accurately laid down by Judge *Story,* in his *Agency,* §91.    "It is clearly established," he remarks, "that if the true owner of property stands by, and knowingly suffers a stranger to sell the same, in his own name, as his own property, without objection, the sale will be valid against the true owner.    For, under such circumstances, his silence and concealment of his title are treated as equivalent to an affirmation that he has no adverse title to the property; and it would be a gross fraud upon the purchaser, to allow the true owner thus to delude him into the purchase, and afterwards defeat the supposed rights acquired under it;" or, in the emphatic words of *Tindal,* Ch. J., in *Gosling* v. *Birnie,* 7 *Bing.* 339.    (20 *E. C. L.* 153.)    The defendant is estopped, by his own admissions; for unless they amount to an estoppel, the word may as well be blotted from the law.    In the strong language of Lord *Denman,* in *Pickard* v. *Sears,* 6 *Ad. & El.* 479., "the rule of law is clear, that when one, by his words or conduct, wilfully causes another to believe the existence of a certain state of things, and induces him to act on that belief so as to alter his own previous position, the former is concluded from averring against the latter, a different state of things as existing at the same time."

This subject was very clearly illustrated, by Mr. Justice *Bayley,* in delivering the opinion of the court in *Keane* v. *Rogers,* 9 *B. & C.* 577. 588.    (17 *E. C. L.* 449.)    It was an action of trover, brought by a person against whom a commission of bankruptcy had issued, against his assignees, to recover the value of goods, which, as assignees, they had sold; and it appeared, that he had *assisted* the assignees, by giving directions as to the sale of the goods.    He was estopped disputing the commission.    See *Clark* v. *Clark,* 6 *Esp. R.* 61.    *Like* v. *Howe,* 6 *Esp. R.* 20.    *Watson* v.

*Wace*, 5 *B. & C.* 153. (11 *E. C. L.* 153.) *Welland Canal Co.* v. *Hathaway*. 8 *Wend.* 483. *Jennings* v. *Whitaker*, 4 *Munroe*, 50. *Grant* v. *Jackson*, *Peake's Cas.* 203. *Ashmore* v. *Hardy*, 7 *Car. & Pa.* 501. (32 *E. C. L.* 601.) In these cases, the doctrine of estoppel is sanctioned and asserted, as I claim it to be ; and it is unhesitatingly applied to cases less marked than the present one.

I do not advise a new trial.

In this opinion WAITE, J., concurred.

*New trial to be granted.*