ALPHA WAKEFIELD *v.* ZERA M. CROSSMAN, AND R. CAMP-
BELL, TRUSTEE, AND J. S. HOLDEN, CLAIMANT.

*Trustee Process. Admissions. Estoppel.*

A. gave his note to B. for $50, payable in two years; and B. agreed with C. to transfer the note to him, for a quantity of shingles, which C., in consideration thereof, agreed to make for B. ; but before the shingles were made, or the note actually transferred, A. was summoned as the trustee of C., and thereupon C. refused to go on and make the shingles, and B. paid him for what he had made, and entered as claimant in the suit ; upon this state of facts, *it was held*, that A. was indebted to B. and not to C.; but if the shingles had been made, or the note actually delivered, at the time of the service of the process, then A. would have been indebted to C., and the plaintiff would have been entitled to a judgment against A., as trustee of C.

A party is not barred or estopped, by an admission or statement, when made in good faith, or under a mistaken impression of its nature or extent in fact ; and the party making the admission, to be bound or estopped, must be informed or understand the interest of the one making the inquiry, or that his admission or statement is going to be, or will be likely to be, relied upon by some one.

TRUSTEE PROCESS. Judgment was rendered against Crossman, the principal debtor. And Joseph S. Holden entered as claimant :

On trial, the court found the following facts, in relation to the said claimant.

That R. Campbell, the trustee, executed a note to said Holden in April, 1849, for $50, payable in two years, with interest, which note is still due. That in the spring of 1850, said Holden contracted with said Crossman to make one hundred thousand of shingles for him, and agreed to deliver said note, in part payment for making said shingles, when they should be done; but said Holden retained the note, and Crossman never saw the note. That Crossman made a part of said shingles, and on the 20th or 21st of June, 1850, one Riggs was making enquiries, with a view to secure the plaintiff's debt; but of this, said Holden had no knowledge or notice ; and that said Holden told the said Riggs, he had hired said Crossman to make one hundred thousand of shingles, and had let him have the said note towards the pay ; that said Riggs asked said Holden when the note was due, and Holden replied, next April; said Riggs then asked said Holden what Crossman had

done with the note; Holden replied, that he did not know what he had done with it, or whether he had put it off or not. That there was no evidence, that Holden had any knowledge that Crossman was indebted to the plaintiff.

. That the plaintiff, on learning these facts, and on the next day, commenced this suit, and said Crossman thereupon quit the job and refused to make any more shingles for said Holden, and said Holden paid him for what he had then made.

The plaintiff insisted that the claimant was estopped, by his admissions or statements to said Riggs, from setting up a claim to the said note; the plaintiff having acted upon the same, and commenced this suit, and prosecuted it on the faith of said representations.

The County Court, May Term, 1852,—COLLAMER, J., presiding,—decided that the claimant was not estopped, as it did not appear that he knew for what purpose the enquiries were made by said Riggs, and rendered judgment for the claimant.

Exceptions by plaintiff.

*S. Fullam,* for plaintiff.

We insist the claimant is estopped, by his representations to the plaintiff's agent, Riggs, from setting up a title in himself to the note.

The doctrine of estoppel *in pais* is founded on the *moral* qualities of the conduct of the party.

In *Palleteau* v. *Jackson,* 11 Wend. 117, NELSON, J. says, "Every man is bound to speak and act according to the truth of the case, and the law will presume he has done so, and will not allow him to contradict such reasonable presumption."

In *Hicks et al.* v. *Crane et al.,* 17 *Vt.* 455, REDFIELD J. says, "If a man has made representations, which he expects another may or will act upon, and the other in fact acts upon it, he is estopped to deny the truth of the representations."

It is not necessary that Holden should have known for what purpose the enquiry was made. If he knowingly asserted what was false in relation to the ownership of his own property, and the plaintiff acted upon it, by every principle of *justice* and *morality,* he should be estopped.

If a man tell what he considers a "*white lie,*" and another is thereby injured, he should abide the consequences.

In short, every person who knowingly perpetrates a wrong, if an injury result from it, should suffer the consequences.

If a man suffer a vicious beast to go at large, he must pay all damages occasioned thereby—so, if he knowingly put a lie in cir-culation.

*Robbins & Chapman* for trustee and claimant.

1. In cases of this nature, a party is never estopped, unless he has been guilty of fraud or laches. *Evans* v. *Bicknell*, 6 Ves. 174.

The case finds, that Holden had no knowledge of Crossman's indebtedness to the plaintiff, or that Riggs was seeking to secure the same; this removes all suggestions of fraudulent representations on the part of Holden. *Mackay* v. *Holland*, 4 Met. 75.

It is essential to an estoppel *in pais*, that the claimant should know that the plaintiff was about to act in reliance of the claimant's statement. *Tufts* v. *Hayes*, 5 N. H., 452. *Wallis* v. *Trusdell*, 6 Pick. 455. *Hicks et al.*, v. *Cram et al.*, 17 Vt. 449.

This kind of estoppel is a creature of equity, and will not be extended by courts of law farther than it has been carried by courts of equity. *Heard* v. *Hall*, 16 Pick. 460.

2. The plaintiff cannot prevail against the claimant in this case, as he went to trial in court below, upon the facts stated. The record shows no plea of estoppel, other than the intimation of the case stated in the bill of exceptions; and when a party takes issue on the facts, he waives the estoppel. 1 Swift's Dig. 622, and cases there cited.

The opinion of the court was delivered by

ISHAM, J. The plaintiff having obtained judgment against Mr. Crossman, the principal debtor, the question now arises, was the trustee, at the time of the service of this writ, indebted to Crossman, the principal debtor, or to Joseph S. Holden, the claimant.

We learn from the case that Campbell, the trustee, in 1849, executed his note for the sum of $50, to Holden, the present claimant, payable in two years, which is still due.

In 1850, Mr. Holden agreed to transfer the note to Mr. Crossman, the principal debtor, for shingles, which Crossman had contracted to make for him. If the shingles had been made, or the

note actually transferred, Campbell would have been indebted to Crossman on that note, and the plaintiff would have been entitled to judgment against him, as trustee.  The note, however, has never been actually transferred or delivered to Crossman, but has always remained and still remains in the hands of this claimant, and Crossman has refused to make the shingles or perform the contract, for which the note was to be transferred to him.  As between Crossman and Holden, it is evident Crossman has no claim to the note. The property in the note never passed from Holden, neither is he under any obligation to transfer it to Crossman, from any contract existing between them.

It is insisted, however, by the plaintiff, that he has a right as against this claimant, to treat this note as the property of Crossman, and that this claimant is estopped to deny this right of the plaintiff, or to set up a title or claim to the note in contravention of that right ; and it is urged that estoppel arises from representations made by Holden, the claimant, in relation to the right of Crossman to the note.

We learn from the case that Mr. Holden, the payee of the note, after the contract for the shingles was made, and while the note was in his possession, represented to one Franklin Riggs, who made enquiries with a view to secure the plaintiff's debt, but of which Mr. Holden was ignorant, that he had let Crossman have the note against Campbell, in payment for shingles, which he had hired him to make, and that he did not know what Crossman had done with the note—whether he had put it off or not; and that on these representations this suit was commenced,

It is very true, " that no one shall be allowed to interpose a " claim or right, or to avoid any liability, at variance with his pre- " vious conduct and declarations, where another has acted upon the " faith of such conduct and declarations, and an injury will result " from allowing those acts or declarations to be retracted."

To give that effect, however, to such declarations, it should appear, that they were made with a fraudulent design, or at least with an intent to induce a line of conduct which the party would not otherwise have taken, and that in reliance upon those declarations, that line of conduct was pursued.  There is nothing in the case to show that these declarations were made under such circumstances, or that Holden, the claimant, knew or suspected that the

person making the enquiry had any interest in the statements made, or that in reliance upon them, any line of conduct would be pursued. In truth, the facts in the case were such that these representations might be made in all sincerity and honesty. It was true in fact, that a contract for shingles was made, and that when the shingles were made, Crossman was to have this note. A definite bargain to that effect was consummated, and the making of the shingles under that contract was in progress. In speaking of this matter, and the rights of Crossman under the contract, Holden used language as if the contract had been perfected. Regarding it as certain in its fulfilment, and not anticipating the occurrence of any event to prevent the performance, he spoke of the note as belonging to Crossman, and as being ignorant of what disposition he designed to make of it. These representations in regard to the note were such as he expected would soon exist in fact, and which would probably have occurred, but for the service of this process.

The principle is well settled, that a party is not bound or estopped by an admission or statement, when made in good faith, or under a mistaken impression of its nature or extent in fact. *Whitaker* v. *Williams*, 20 Conn. 98. 2 Smith's Lead. Cas. 564. To bind this claimant by those statements, and estop him from setting up his title and claim to the note, it must appear affirmatively in the case, that they were made to induce some act on the part of this plaintiff, and that the plaintiff has acted in reliance upon those representations, which, if permitted to be disproved, will operate as a fraud and injury to him. The case is entirely destitute of those considerations which are necessary to estop the claimant from claiming his right to the note.

The result is, that the judgment of the County Court must be affirmed.