Clark v. Coolidge.

---

THOMAS R. CLARK v. WILLIAM H. COOLIDGE.

1. CONTRACT; *Construction; Agreement by Lessee to pay Taxes.* Where the lessee of property agrees to pay all assessments that may be made thereon, he in fact agrees to pay such assessments only as are valid, or such as can be legally enforced against the lessor, or against the property.

2. ———— *Rights of Defendants.* It is a general rule of both law and equity, that a party may always plead, prove and rely upon the truth of any transaction in the determination of his rights, unless he would be committing a fraud upon the rights of the adverse party by doing so.

3. ESTOPPEL; *What facts do not estop a party.* Where an assessment or special tax which is void has been made against property, and the lessor comes to the lessee and tells him the amount thereof, and also asks why the lessee does not pay the same, and the lessee says it is all right, and he will pay the same, but does not do so, and afterwards the lessor pays it, and then brings suit against the lessee to recover from him the amount thereof, the lessee is not estopped from showing that the assessment is void.

4. ———— *Application of Rule.* Estoppels *in pais*, as a general rule, can apply only where the party doing the act or making the admission knows the truth of the matter connected therewith, or pretends to know it, or has better means of knowing it than the adverse party; where the adverse party does not know it; where the act or admission is expressly designed to influence the conduct of the adverse party; and where the adverse party relies upon and is influenced by such act or admission.

*Error from Leavenworth District Court.*

ACTION upon a stipulation or agreement in a lease to pay taxes, etc. *Coolidge* owned lot 14, in block 76, in Leavenworth city. In 1865 he leased said lot to *Clark* for a term of five years. Both parties signed the lease, which contained the stipulation, among others, that said *Clark* should pay "any and all assessments, general or special, which may hereafter be charged or assessed against the said lot above described, for grading, paving, macadamizing the streets, or for curbing sidewalks, or any and all assessments of any kind and nature that may be charged or assessed against said property, during said term of five years aforesaid." Certain assessments were made during the term for street improvements; and *Clark* failing to pay the same the lots were sold for such special taxes. *Coolidge* bought up the certificate of such sale, and brought his action against *Clark* to recover the amount thereof. The case was tried in January, 1869. Several questions were raised, and numerous exceptions taken, very few of which were considered in this court, and are stated in the opinion. Verdict and judgment in favor of *Coolidge* for $297.30; and *Clark* brings the case here by petition in error.

*Clough & Wheat,* for plaintiff in error:

1. Instead of proving the allegations contained in his petition about the assessments of special tax for the improvements, by proving that such acts had been done by proper officers as would establish the truth of such allegations, Coolidge sought to establish the truth of such allegations by parol evidence; that is, he sought to prove certain verbal admissions of Clark, thus to supply the place of that, which if it ever existed at all, was in writing. That parol evidence, or parol admissions of contents or effect of records or other writings, is not competent, see 8 Wend., 480; 5 Gilman, 231; 11 Ark., 23; 12 E. C. L., 32; 11 Mo., 3; 2 Pick., 223; 8 Wis., 1; 8 Iowa, 45; 18 Barb., 350.

2. It is apparent from the testimony that Coolidge and his attorney, in certain conversations with Clark, demanded of him

payment of certain moneys which they claimed to be the then amount of certain assessments made on the lot mentioned in the petition—and represented to him that $278 then stood as a charge against said lot; that he promised to pay said amount; that Coolidge for a time thought perhaps that he would, but finally was led to believe he would not; that Coolidge made some arrangement to take the papers up from Douglas.

The court erred in refusing to instruct the jury that the statements or admissions of Clark were not competent to show that the alleged assessments were legally made. Under what rule of law it can be maintained that these parol statements and admissions of Clark were competent to prove the legality of a pretended assessment is to us unknown.

3. The action was founded on a written contract which only required Clark to pay such assessments or special taxes as were legal, valid, actual charges on the lot. He was not, under the contract mentioned in the petition, required to pay any *illegal* or void assessment; and of course Coolidge could only recover on the contract sued upon.

The district court decided, and instructed the jury, that the alleged "assessments were void." If said assessments *were void*, it appears to us, as matter of law, that Clark was entitled to a verdict, and that the court ought to have so told the jury.

4. But the court permitted Coolidge to recover upon the pretended effect of the parol promises claimed to be made by Clark.

There was no pretense that there was any consideration for any of the "parol promises" made by Clark, nor were such promises declared on in the petition. The action was in nowise founded thereon. To have maintained an action on such parol promises it would have been necessary for Coolidge to have counted thereon, and to have alleged and proved a consideration therefor. 1 Chitty Pl., 293, 297.

5. But *estoppel* is claimed. We do not understand that Coolidge sought to recover on Clark's promises, as such—but that, on the contrary, he claimed and the court ruled that Clark was, because of the parol promises and admissions testified to,

estopped from denying the assessments were valid, legal, and subsisting charges on the lot. And in this we think the court erred for several reasons:

First, Because there was no estoppel unless Coolidge did not know the truth about the legality (or rather non-validity) of the tax, nor unless he was without reasonable means of acquiring correct information about that matter. 37 Penn. St., 384; 31 id., 331; 17 Serg. & R., 383; 17 Md., 212; 14 Cal., 367; 25 Vt., 273; 5 Hill, 303; 22 Pick, 256; 10 Cush., 408. And from his own testimony, and the subsequent claim about this matter of estoppel, it is but reasonable to believe that Coolidge was dunning Clark to get an estoppel. 24 Ill., 549.

Second, Because if Clark did not know of the defects in the assessment, then there is no estoppel against him. 49 Me., 153; 20 Conn., 104; 5 Metc., 479.

Third, Because there was no estoppel against Clark unless his promises and admissions were made with a design to influence and did influence Coolidge to purchase the certificates. 7 E. C. L., 1; 2 Excheq., 654; 11 Penn. St., 53; 31 id., 331; 37 id., 379; 40 Me., 348; 30 N. Y., 541; 8 Barb., 108; 38 Ill., 462.

Fourth, Because if both parties had equal means of knowledge, there can be no estoppel by the silence of one of them. The facts necessary to work an estoppel must appear affirmatively. 31 Penn. St., 331. In order to create an equitable estoppel in favor of Coolidge (if everything else was in his favor,) he should have proven affirmatively that he paid for the certificates, and how much; and also that he did so at a time when he was, in consequence of acts, promises, or admissions of Clark, of the belief that the assessments were valid, and if it is uncertain whether he purchased the certificates before he concluded Clark would not pay, such uncertainty was decisive against him. 25 Penn. St., 449; 22 Iowa, 367.

Fifth, No admission of a debt or liability by a party can be strong enough to preclude the person from showing that it was made in ignorance of his rights. 25 Penn. St., 409; 10 Cushing, 408.

6. The court also instructed the jury that "The measure of damages is the amount plaintiff was compelled to pay to take up the certificates offered in evidence."

In this charge the court assumed that Coolidge had been compelled to make a certain payment to take up the certificate, and in doing so we claim the court erred; because, whether Coolidge had or had not been compelled to make such a payment was a matter of fact to be determined by the jury.

*J. L. Pendery,* for defendant in error:

1. When during the term of a lease, in which the lessee agreed "to pay all taxes and assessments of any kind and nature that may be charged or assessed against said property," the city does work on the street fronting the demised premises, and makes an assessment therefor, it is as between the lessor and lessee, the duty of the lessee to take care of such assessment.

This he may do, either by paying such assessment, or taking due steps to have it adjudicated illegal.

2. By the terms of the contract, it was the duty of Clark, the lessee, to keep the demised property free from tax incumbrances; or, in other words, he contracted with Coolidge that he would examine every attempted assessment, and if found legal, pay the same.

When, after such a contract, an assessment is made, and the same not being paid, Clark is approached by Coolidge for the reason of such non-payment, and then declares that the assessment is all right, and in addition gives some other fact as his excuse for non-payment, he is estopped, when Coolidge has paid such assessment, from saying that it was irregular and invalid. 21 Wend., 94; 14 Wis., 281; 1 Abb. Pr., 58; 4 N. H., 69; 4 Wend., 267, 275; 1 Greenl. Ev., § 312; 17 Conn., 345; 18 id., 138; 19 id., 345; 22 id., 451; 22 Barb., 56; 2 E. D. Smith, 380; 1 Phil. Ev., 457.

The opinion of the court was delivered by

VALENTINE, J.: There are twenty-two assignments of error

in this case, but in our opinion it is not necessary to consider more than one of them. In passing the other assignments we will say however, but without deciding the questions involved therein, that we have not discovered any error except such as we shall hereafter mention.

The facts in this case so far as they affect the question which we propose to discuss seem to be substantially as follows: On the 8th of September, 1865, William H. Coolidge leased to Thomas R. Clark lot 14, Block 76, of Leavenworth City, for five years, and Clark was to pay all taxes and assessments thereon for that time. During that time certain supposed street assessments which were void were made against said lot. Coolidge and Clark had divers conversations concerning these assessments. Coolidge showed some papers to Clark, which Coolidge claimed stated the amount of said assessment. Clark at one time said the amount was too great, but he never denied the validity of the assessment. He always said he would pay it. At one time however he said he had met with a severe loss and had no money, and could not pay it. It is not shown whether either Coolidge or Clark knew anything of the invalidity of said assessment. Nor is it shown that Clark pretended to know anything about it, or that he had any better means of knowing it than Coolidge had. Afterwards Coolidge paid said assessment, or rather he purchased the sale certificate of the assessment. He never however told Clark that he would pay it, or that he had any intention of paying it; and Clark never requested him or any one else to do so. It does not appear from the record that Clark ever made any effort to pay it except that Coolidge testified that Clark said in one of his conversations "that he (Clark) had tried to pay it once but could not do it; he and the contractor could not agree; that the amount was not proper." Coolidge also testified that "He (Clark) led me to believe that he would pay it, but failing, I was led to believe he would not pay it." So Coolidge paid the assessment himself, and then brought this action to recover the amount of the same from Clark. The case was tried before a jury, and the court among other things instructed the jury as follows:

"The assessment on lot 14 in block 76 for improving Shawnee and Seventh streets was void because of irregularities in proceedings of the city prior thereto."   "But if the testimony shows that the plaintiff called upon the defendant after the lot had been sold and a certificate of sale issued, and showed him the amount thereof, and requested the defendant to pay the assessments or redeem the lot from such sale, and the defendant then admitted the assessments to be regular, and the sale valid, and promised to pay the assessments or redeem the lot, and did not do so within a reasonable time, and the plaintiff upon the faith of such admission and promise, paid the assessments or purchased the sale certificate and became the owner thereof, he is entitled to recover in this action.

"That the record and papers read in evidence by the plaintiff show the alleged assessments for improving Shawnee street to be void."   "The record and papers read in evidence by the plaintiff show the alleged assessment for improving Seventh street to be void."

We think the court below erred in giving the foregoing instruction.   In this court it must be assumed as legally established that said assessments were void, though from the record, aside from the foregoing instruction of the court, we cannot tell whether they were void or not.   If said assessments were *void*, Clark was certainly not liable to pay the assessments against said lot.   It will certainly not be claimed that when Clark leased said lot he agreed to pay any assessment except such as was valid, or such as could be legally enforced either against Coolidge or against the lot itself.   And if the assessment was void, why not allow Clark to show it, and have the benefit of that fact?   Here is where we think the court erred.   It is a general rule of both law and equity, that a party may always plead and prove and rely upon the truth of any transaction in the determination of his rights, unless he would be committing a fraud upon the rights of the adverse party by doing so.   *Patterson v. Lytle*, 11 Penn. St., 53, 55, et seq.; *Hill v. Epley*, 31 Penn. St., 331, 333, et seq.; *Woods v. Wilson*, 37 Penn. St., 379.

But it is claimed that Clark by his admissions to Coolidge is estopped from setting up and proving the truth.   Now it

3. Estoppel de- will be admitted whenever a party by some act or
fined. admission of his intentionally causes another to
do something which this other person would not otherwise
have done, such a party is generally estopped from showing
that his act or admission was false. Or, as it is more gener-
ally, probably more properly, expressed, "A party will be
concluded from denying his own acts or admissions, which
were expressly designed to influence the conduct of another,
and did so influence it, and where such denial will operate to
the injury of another." 49 Maine, 153, and cases there cited.

As a general rule estoppels *in pais* can apply only in the
following cases:

1.–Where the party doing the act or making the admission
knows at the time the truth of the matter about which he
4. Application is acting or making admissions, or pretends that he
of rule. knows the same, or has better means of knowing
the same than the other party." 49 Maine, 149, 153; 20
Conn., 98, 104; 5 Metc., (Mass.,) 479, 484; 31 Penn. St., 331,
333, et seq.; 37 Penn. St., 379, 384.

2.–Where the other party does not know the truth of the
same. 31 Penn. St., 331, 333; 37 Penn. St., 379, 384; 11
Penn. St., 53, 55.

3.–Where the act or admission is expressly designed to influ-
ence the conduct of the other party. 49 Maine, 149, 153; 8
Barb., 102, 108.

4.–Where the other party relies upon and is influenced by
such acts or admissions. 8 Barb., 102, 108; 20 Conn., 98,
104; and authorities heretofore cited. (Also upon this point,
and upon all the foregoing points, see the numerous authorities
cited in the briefs of counsel.)

Now from the record in this case Clark was clearly not
estopped from showing the truth of this transaction. He
never consented or agreed that Coolidge should pay said assess-
ment. He did not *know*, or pretend to *know* anything
concerning the validity of the same. From the evidence it
it would seem that Coolidge knew more about it than Clark,

and that Clark obtained his knowledge from Coolidge. Clark's means of knowledge was no better than that of Coolidge. There is nothing in the evidence that tends to show that Coolidge did not know that said assessment was invalid, except the inference that might be drawn from the fact of his purchase of the certificates; and upon Coolidge rested the burden of proof. There is no evidence that tends to show that Clark intended to mislead or to influence Coolidge in the least, or to cause him to purchase the certificate of assessment; nor can it be claimed that what Clark said was in its own nature designed to influence Coolidge to purchase said certificate; and there is nothing tending to show that Coolidge relied upon what Clark said to him when he did purchase the said certificate.

The judgment of the court below will be reversed and a new trial ordered.

KINGMAN, C. J., concurring.

BREWER, J., did not sit in the case.