### WILLIAM STRONG *v.* WILLIAM ELLSWORTH.

*Trover.  Estoppel in Pais.*

He who by his words, or his actions, or his silence even, intentionally or carelessly, induces another to do an act, which he would not otherwise have done, and which will prove injurious to him, if he is not allowed to insist upon the fulfillment of the expectation upon which he did the act, may insist upon such fulfillment; and equally if he has omitted to do any act, trusting upon the assurance of some other, thus given. and which omission will be prejudicial to him; if the assurance is not made good, he may insist it shall be made good.

But where the plaintiff had a lien upon certain cattle in possession of T., and while so in his possession he sold them to defendant, and while defendant was passing with his drove one W. informed plaintiff, that defendant had bought the cattle, and pointed them out in the drove, and plaintiff supposed that

W., to whom he had made known his lien, and who was solvent, had sold them to defendant, and would be accountable to him for the cattle or his claim upon them; *it was held,* under this state of facts, that the omission of the plaintiff to notify defendant of his lien upon the cattle, did not operate as a waiver of his lien.

The plaintiff, in about one-half hour after the defendant so passed with the cattle, was informed that T. sold them to defendant—*Held*—that plaintiff was then under no obligation to pursue defendant and give him notice of his lien; but that he might at once have commenced his suit for the cattle, and that there would then have been no ground of estoppel; and that plaintiff·did not sue, as early as he might, is no ground of estoppel short of the term of the statute of limitations.

TROVER for two two year old heifers and a calf.

Plea the general issue and trial by jury.

On the trial, the plaintiff offered testimony tending to prove that in the spring of 1851, he sold to one Tisdale the two heifers named in the declaration, for $26, and that he was to receive towards that sum, in one year from that time, two other heifers, then to come two years old, at such price as should be agreed upon, or as should be determined by men to be agreed upon, and that the two heifers, so sold, should remain his property until they should be paid for; that in the fall of the same year one of the said heifers had the calf mentioned in the declaration, and that soon after one Chamberlain Whitcomb, at the request of Tisdale, drove the said heifer and calf from the pasture, where she was kept to his own house, for the purpose of taking care of her; and that soon after said Whitcomb, at the request of Tisdale, proposed to sell the said heifer to the plaintiff who was desirous of purchasing a milch cow; that plaintiff then informed said Whitcomb of the terms of the trade, in respect to the heifers, and told him, if he sold the heifers, or drove them from the place where they were then ·kept, he, should look to him for payment for them. That the same autumn plaintiff was informed by said Whitcomb, that the heifers had been that morning sold to the defendant, who was then passing with a drove of cattle where they stood, and pointed out to the plaintiff the said heifers in the drove, and that plaintiff then supposed that said Whitcomb had sold them, and therefore refrained from giving the defendant any notice of his claim upon the heifers, knowing Whitcomb to be good, and supposing that he had bought them of

said Tisdale, and would pay the plaintiff at the expiration of the year.

The evidence on the part of the defendant tended to prove, that whatever Whitcomb did in respect to attempting to sell the heifers to plaintiff and others, was done at the request of Tisdale, and for his benefit; that said Whitcomb had no notice of plaintiff's claim upon them; that the heifers were in fact sold to the defendant by Tisdale, on the morning of the day that they were so seen by plaintiff in defendant's possession, and that Tisdale was paid a reasonable price for them, in money, by the defendant; that immediately after, and while defendant was driving the heifers past where the the plaintiff stood, plaintiff was informed by Whitcomb that Tisdale had sold the heifers to the defendant, and that the the heifers were then seen by plaintiff, in defendant's possession, and that plaintiff gave no notice to defendant of his lien upon the heifers. That about one half hour after defendant had so passed with the heifers, the plaintiff was fully informed by one James E. Whitcomb, in the presence of Tisdale, that Tisdale had sold the heifers to the defendant, and the price he obtained for them; and that the plaintiff did not then make any objection to the sale, nor then nor ever, until after the decease of Tisdale, which occurred that winter, give notice to the defendant that he had any claim upon the heifers.

The defendant requested the court to instruct the jury, among other things, that if the plaintiff was informed and had knowledge, at the time he saw the heifers in possession of the defendant, as before stated, that they had been sold to the defendant by Tisdale, and Tisdale had received the pay for them, it was his duty to have given notice then to defendant of his claim upon the heifers, and that his omission to do so until after the decease of Tisdale, was a waiver of his specific lien upon the heifers as against the defendant; and that if the plaintiff was then informed, or supposed that Whitcomb had sold the heifers to the defendant by the procurement of Tisdale, or under any arrangement between him and Tisdale, it was his duty to have given notice to the defendant of his claim upon the heifers, and that his omission to do so was a waiver of any such claim, as against the defendant; and that if plaintiff was informed, within half an hour afterwards, that Tisdale had sold the heifers to the defendant, and received the pay

for them, it was his duty then, or within a reasonable time thereafter, to have given notice to the defendant of his lien upon the heifers, and that his omission to do so was a waiver of such lien.

The court charged the jury, that if the plaintiff was informed, when he saw the heifers driven by the place where he stood, and in possession of the defendant, that Tisdale had sold the heifers to the defendant, the omission of the plaintiff to give notice then, to the defendant of his lien upon the heifers, would be a waiver of such lien; but that his omission to give such notice to the defendant, if he was then informed or supposed that the heifers had been sold to the defendant by Whitcomb, would not be a waiver of such lien; and that notwithstanding the plaintiff was informed, within half an hour afterwards, in the manner which the testimony tended to prove, that Tisdale had sold the heifers to the defendant, and received the pay for them, he was under no obligation by reason of such notice, to give any notice to defendant of his lien upon them, and his omission so to do, would not, in this state of facts, be any waiver of his lien.

The jury returned a verdict for plaintiff.

To the charge of the court, and to the refusal to charge as requested, the defendant excepted.

*Washburn & Marsh* and *A. P. Hunton* for defendant.

The defendant was a *bona fide* purchaser, without notice, and such purchasers are said to be the favorites of the law. Notice to him, at that time would have enabled him to preserve his rights, as against Tisdale, and this was within the knowledge of the plaintiff. The owner of property, if he would claim protection of courts, must perform all those duties which equity and good conscience require of him; and the most important of these duties, as to innocent third persons, is the assertion of his rights, whenever reasonably required. The rule is, that "if a person maintain silence, when in conscience he ought to speak, equity will debar him from speaking, when conscience requires him to be silent." *Hall* v. *Fisher*, 9 Barb. Sup. Ct. 17.

If the owner of property stand by and see a third person sell it, and maintain silence, he cannot afterwards assert title to it, as against the purchaser. *Roe* v. *Jerome*, 18 Conn. 153. *Cross* v. *Marston*, 17 Vt. 541.

Possession, in such case, as in this, is *prima facie* evidence of ownership, and the principle, which, in that case, will preclude the party from subsequently asserting his claim, will give the same effect here, where the plaintiff seeing the defendant drive away the cattle, and knowing that he had in good faith purchased them, and that it was then in defendant's power to rescind the sale and place himself in *statu quo*, yet omitted to assert his claim. It is within the rule stated by NELSON, J., in *Welland Canal Co.* v. *Hathaway*, 8 Wend. 483, that the acts and admissions of the party operate against him in the nature of an estoppel " *where in good conscience and honest dealing he ought not to be permitted to gainsay them.*" And in 2 Smith's Lead. Cas. 532, it is said that " the same reason exists in all cases, *where the owner of property sanctions a purchase from a third person, whether expressly or only by implication.*" *Prichard* v. *Sears*, 6 A. & E. 469, and *Gregg* v. *Wells*, 10 A. & E. 90, are strong illustrations of this principle ; and the same is recognized in *Stevens* v. *Stevens*, 2 Coll. 20.

So where one lies by, while he sees another person expend his capital, &c, he is precluded from subsequently asserting rights to the injury of such person. *Parrott* v. *Palmer*, 3 M. & K. 632. *Hall* v. *Fisher*, 9 Barb. Sup. Ct. 17.

So where one assumes, without authority, to act as the agent of another, either in the disposition of his property, or in any other respect, a subsequent ratification, which will have all the effect of a precedent authority, and preclude the principal from asserting inconsistent rights, may as well be by an omission to disclaim, after notice, as by an express subsequent assent. Broom's Leg. Max. 382. *Frothingham* v. *Haley*, 3 Mass. 70. *Shaw* v. *Nudd*, 8 Pick. 9. *Prince* v. *Clark*, 1 B. & C. 186. *Errick* v. *Johnson*, 6 Mass. 196.

And the same principle has a most important application to cases arising upon bills of exchange and promissory notes. The party who, by omitting to assert his rights, places an innocent third person in a position where he may sustain injury, is estopped from afterwards asserting those rights equally with the party, who, by his acceptance, gives credit and currency to a forged bill of exchange. *Price* v. *Neale*, 3 Burr. 1354. *Smith* v. *Mercer*, 6 Taunt. 76. *Carridge* v. *Allenby*, 6 B. & C. 373. *Salem Bank* v. *Gloucester Bank*, 17 Mass. 1.

If the plaintiff's supposition, that the salè had been effected by Whitcomb, justified him in then omitting to give such notice, yet, having received ample notice, within half an hour, that *Tisdale* had in fact sold the cattle, and received the pay, his omission to give notice of his claim until after, in the course of the next winter, Tisdale had deceased, was a full and ample recognition of the authority of Tisdale to sell, and of the sale as made.

*Converse & Barrett* for plaintiff.

The claim of defendant, as well as the charge of the court rest upon and involve the law of *equitable estoppel* or *estoppel in pais.*

1. Is the plaintiff estopped to assert his title by having omitted to give notice of it, in case he was informed, or supposed Whitcomb had sold the heifers, as set forth in the exceptions?

2. Is plaintiff so estopped by having omitted to give notice of his title on being informed of the sale by Tisdale one half hour after the defendant passed along with the drove?

The same principles of law and the same decided cases apply equally to both branches of the charge. *Davis et al.* v. *Bradley & Co.*, 24 Vt. 60, citing from Smith's Lead. Cas., and citing and adopting the law as stated by BRONSON, J., in *Dazell* v. *Odle*, 3 Hill 215, which see, and the cases cited. See also, in the same case, the law as stated by COWEN, J. " *An admission intended to influence the conduct of the man with whom the party is dealing,* and actually leading him into a line of conduct *prejudicial* to his interest, unless the party estopped be cut off from the power of retraction. This I understand to be the very definition of *Estoppel in pais.*"

See also, 2 Smith's Lead. Cas. (Ed. 1847,) p. 534. Story's Eq. 375 § 385, 386. *Pickard* v. *Sears et al.*, 33 E. C. L. 115, and latter clause, page 117. *Morton* v. *Hodgdon*, 32 Maine 127. *Copeland* v. *Copeland*, 28 Ill. 525, 539, 540. *Whitaker* v. *Williams*, 20 Conn. 103. Story on Agency § 91.

The case under either branch of the charge lacks all the elements of an *estoppel.*

1. The omission to give the notice to defendant, had no influence upon him in making the purchase. It had been made, and the

money paid, and possession taken of the property sometime previous to the time when it is claimed notice should have been given.

2. It does not appear, (though defendant was a witness,) that he has suffered any injury. There was no testimony tending to show that he would have undertaken to rescind the trade and reclaim the money, or that he would have succeeded in getting back his money if he had so undertaken.

3. As the case stands on the second point of the charge, the inference is precluded, that the omission to give such notice renders it contrary to *good conscience and fair dealing* for plaintiff to assert his title. *H ———— v. Rodgers*, 9 B. & C. 577, cited in 3 Hill 224. He was acting upon the fact as he understood it by information from Whitcomb, and therefore had no occasion either for purposes of his own safety, or of preventing possible injury to defendant, to give any notice of his title. So too, as the case stands on the third point of the charge, there is nothing indicating, much less showing, that it is *contrary* to good *conscience* and *fair dealing* for plaintiff to assert title as against the defendant. In order to make it so, it should have been shown, that defendant had suffered injury by not receiving the notice—that plaintiff was able and had the means of giving the notice—that defendant was accessible, so that notice could have been given to him.

*Again*—Estoppel can result only from the facts *shown,* and not by *inference* and *intendment.* All its elements must appear clearly and with certainty. It is matter of law, arising upon facts found. 2 Smith's Lead. Cas. (Ed. 1847,) 536. Co. Lit. 352.

In fine ; we claim that upon any facts which the testimony tended to show, an estoppel cannot be operated upon any known principle of law.

All the cases put the doctrine of this kind of estoppel on the ground that the party's words, or acts induced reliance on a given state of facts, *at the time of the transaction* between the other parties. 17 Vt. 455—" If one man has made representations which he expects another may or will act upon, and the other does, in fact, act upon it, he is estopped to deny the truth of the representations."

23 Vt. 449—" The owner of land, who stands by and aids in the execution of a deed of such land by a stranger, and himself

Strong *v.* Ellsworth.

becomes a witness of the conveyance, is thereby estopped to deny that the *title passes.*"

The opinion of the court was delivered by

REDFIELD, Ch. J. The doctrine of *estoppels in pais* is one, which so far at least, as that term is concerned, has grown up chiefly within the last few years. But it is and always was a familiar principle, in the law of contracts. It lies at the foundation of morals, and is a cardinal point, in the exposition of promises, that one shall be bound by the state of facts which he has induced another to act upon. He who by his words, or his actions, or by his silence even, intentionally, or carelessly, induces another to do an act, which he would not otherwise have done, and which will prove injurious to him, if he is not allowed to insist upon the fulfillment of the expectation, upon which he did the act, may insist upon such fullfilment. And equally if he has omitted to do any act, trusting upon the assurance of some other thus given, and which omission will be prejudicial to him, if the assurance is not made good, he may insist, it shall be made good.

But in applying this rule, to the present case, it would seem the county court did give the defendant the full benefit of it. It is not claimed, that the plaintiff gave any encouragement to the sale, or that he was guilty of any misconduct, in regard to it, until the defendant had purchased the property, and driven it off and had been gone half an hour, with his drove. It is not claimed, that it was then the plaintiff's duty to have pursued defendant. And it does not appear, that plaintiff had any other opportunity, to have informed the defendant of his lien, upon the property. It is only said, that when informed of the sale, in the presence of Tisdale, by Whitcomb, he did not object to the sale. But there is nothing in the case to show, that this had any tendency to mislead the defendant, or that the plaintiff was in any manner called upon, at that time, to make a formal declaration of his claim. In short there seems to have been no particular call upon plaintiff then to assert his title, and if not, his silence is not evidence against him, much less conclusive. *Vail v. Strong,* 10 Vt. 475. *Gale v. Spooner,* 11 Vt. 152.

And the objection that the plaintiff did not give notice to defendant, that he had any claim upon the property, seems to us by no

means to indicate any intention to mislead the defendant, or any indifference to his interest, by which defendant has unjustly been misled, which is in any sense like that of the drawee of a bill accepting, or paying it, upon the credit of a forged signature of his own correspondent, which he is bound to know, or like that of a bank taking counterfeits of its own bills, which it is bound to know, and which the innocent holder, if told of, at the time, might stand some chance of obtaining redress upon. *Price* v. *Neal,* 3 Barr. 1354. *Salem Bank* v. *Gloucester Bank,* 17 Mass. 1.

If there is any thing, which the testimony tends to show, that he should have done, which he did not do, it seems to us, it was to have pursued after the defendant, and informed him, at once, and while there was some reasonable probability, that the notice would be available to him. But this is so unreasonable an act, that it is not claimed. And we think, he might have sent a sheriff after him with a writ at once if he elected, and that there would then have been no pretence of an estoppel, and that he did not sue as early as he might, is no ground of estoppel short of the term of the statute of limitations. And giving notice to defendant is not shown to have been any more readily in plaintiff's power, and it is certain it would probably have been far more unavailing to defendant. And no one could have expected plaintiff to give notice to defendant, when first informed of the sale, and while he expected the sale was made by Whitcomb, who was entirely solvent, and whom the plaintiff had informed of the state of his claim, and that if he sold the cattle, he should look to him for pay; while he so understood the transaction, he would suppose Whitcomb the only one interested to know of his claim, and he had already informed him of all the facts concerning it.

It has been held, that a declaration will not take effect as an absolute estoppel unless it is made with a full knowledge of the right to be estopped, and with the design, or effect of creating an impression, that it does not exist, or will not be enforced. *Whitaker* v. *Williams,* 20 Conn. 98, id. 568. *Steele* v. *Putney,* 3 Shepley 327. In 2 Smith's Lead. Cas. 564, it is said, "That the rejection of evidence," on this ground, "is designed to prevent fraud on the one part, and injury on the other," and will not be extended beyond this. And a declaration made under a mistake of one's rights, either in fact, or in law, may be withdrawn. 20 Conn. 98.

Judgment affirmed.