In re Stephen J. JAMO and Lynn
M. Jamo, Debtors.

Katahdin Federal Credit
Union, Appellant,

v.

Stephen J. Jamo and Lynn
M. Jamo, Appellees.

No. EB 00–106.

United States Bankruptcy Appellate Panel
of the First Circuit.

May 29, 2001.

Daniel L. Cummings and Norman, Hanson & Detroy, LLC, for the Appellant.

Richard D. Violette, Jr., for the Appellees.

Before VOTOLATO, HILLMAN, DEJESUS, U.S. Bankruptcy Appellate Panel Judges.

HILLMAN, Bankruptcy Judge.

Katahdin Federal Credit Union ("KFCU" or "Defendant") appeals from a finding that it acted in violation of the automatic stay in dealing with the debtors, Stephen J. and Lynn M. Jamo ("Debtors" or "Plaintiffs") in connection with Debtors' attempted reaffirmation of their home mortgage, and the injunctive and monetary penalties imposed for that violation. For the reasons given below, we affirm.

## Factual Background

At the time that they filed a petition under Chapter 7, Debtors had a first mortgage on their home with KFCU (the "Mortgage"). They were also indebted to KFCU on several other unrelated unsecured loans. After their bankruptcy filing, KFCU refused to accept payments on the Mortgage. When they sought to reaffirm the Mortgage, KFCU declined unless

Debtors also reaffirmed the unsecured loans, and represented that, should the reaffirmation package not be approved, it would foreclose on the debtor's home.[1] Debtors then filed this adversary proceeding seeking monetary and other damages for violation of the stay:

Plaintiffs prays [sic] this Court to:

(a) require Defendant to allow Plaintiffs to bring the payments under their mortgage current without penalty and without the interest that accrued by virtue of Defendant's refusal to accept such mortgage payments from Plaintiffs since their date of filing;

(b) permanently enjoin Defendant from foreclosing on Plaintiffs' mortgage for any reason associated with

(i) the instant litigation;

(ii) Plaintiffs' 1999 filing in Chapter 7 bankruptcy;

(iii) the discharge in bankruptcy of any of Plaintiff's unsecured debt to Defendant;

(iv) Plaintiffs' failure or inability to make payments thereon resulting from Defendants refusal to accept tendered payments during the pendency of Plaintiff's bankruptcy proceeding;

(c) award Plaintiffs their actual damages, including but not limited to any additional penalties or interest that Plaintiffs will be required to pay as a result of Defendant's refusal to accept tendered payments during the pendency of Plaintiff's bankruptcy proceeding;

(d) require Defendant to pay such exemplary or punitive damages to Plaintiffs as justice may require;

(e) require Defendant to pay Defendant's [sic] reasonable costs and attorney's fees;

---

**1.** Throughout its brief, KFCU contends that no such threat was made. Our review of the appendix, however, leads us, as it did Judge Haines, to the opposite conclusion.

(f) provide Plaintiff with such other legal and equitable relief as justice may require.

*Appendix,* Tab 1, p. 4.

Judge Haines heard the proceeding on an agreed record. He concluded that KFCU's actions in tying approval of the Mortgage reaffirmation to reaffirmation of the other unsecured loans violated the automatic stay. *Jamo v. Katahdin Federal Credit Union (In re Jamo),* 253 B.R. 115 (Bankr.D.Me.2000). His order (the "Order") provided:

Pursuant to the findings of fact and conclusions of law set forth in this court's memorandum of decision dated this date, it is hereby ORDERED THAT:

1. Katahdin Federal Credit Union (KFCU), shall be and hereby is enjoined from:

A. Foreclosing its mortgage on the plaintiffs' residence for any reason associated with this litigation, the plaintiffs' filing of a voluntary chapter 7 bankruptcy petition in 1999, the discharge of any debts pursuant to the plaintiffs' 1999 bankruptcy case, or any change in the plaintiffs' union membership status that resulted from bankruptcy or discharge;

B. Foreclosing its mortgage on the plaintiffs' residence on account of any asserted payment default to date, provided, however, that the plaintiffs bring current their mortgage obligation (less interest and late charges accrued due to tardiness to date) under the terms of the original mortgage note within twelve months of the date of this order;

C. Collecting or attempting to collect any collection costs or attorneys' fees to which it may claim entitlement under the plaintiffs' mortgage note to the extent those fees accrued prior to the entry of this order or to the extent those fees relate to the plaintiffs' bankruptcy case or this litigation; and

D. Withholding its consent to the plaintiffs' reaffirmation of their mortgage obligation on its original terms on account of the plaintiff's failure to reaffirm other prebankruptcy debts due to the credit union.

It is FURTHER ORDERED that any and all terms of the mortgage reaffirmation agreement that condition its vitality on approval or enforceability of other reaffirmation agreements between the plaintiffs and the credit union shall be, and hereby are, stricken;

It is FURTHER ORDERED that KFCU shall pay the plaintiffs their reasonable attorneys' fees and costs incurred in the course of negotiating and litigating reaffirmation and stay violation issues; that plaintiffs' counsel shall file an affidavit accompanied by an itemization of such fees and costs within 10 days of the date of this order; that KFCU shall file its objection, if any, to such fees and costs within 10 days thereafter; and that a hearing shall convene, if necessary, as set by the Clerk if such objection is filed.

It is FURTHER ORDERED that the debtors' home mortgage reaffirmation agreement with KFCU, as modified under the terms of this order, is APPROVED.

This appeal followed.

## Statement of Issues

KFCU raises these issues on appeal:

1. Did the Bankruptcy Court err in holding that KFCU violated the automatic stay by "linking" its consent to reaffirm its secured claim with the Debtors' consent to r_affirming unsecured claims.

2. Did the Bankruptcy Court exceed its authority in granting relief in the form

of approving a reaffirmation agreement on terms not consented to by KFCU and in granting injunctive relief?

### Appellate Jurisdiction and Standard of Review

 We have jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. § 158(b)(1) and (c). The order below disposes of a discrete dispute within a larger case and is appealable. *Estancias La Ponderosa Development Corp. v. Harrington (In re Harrington)*, 992 F.2d 3, 5 (1st Cir.1993); *Tringali v. Hathaway Machinery Co., Inc.*, 796 F.2d 553, 558 (1st Cir.1986). The facts were stipulated below and hence are not in issue. We will review the conclusions of law de novo. *Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 30 (1st Cir.1994).

### Discussion

#### I. Is "linking" a violation of the automatic stay?

 The Bankruptcy Code prohibits attempts to collect pre-petition debts in absolute terms. The automatic stay enjoins "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case." 11 U.S.C. § 362(a)(6). On the other hand, the debtor is permitted to announce his or her intention to reaffirm a pre-petition debt, 11 U.S.C. § 521(2)(A), and to enter into a reaffirmation agreement with the creditor upon compliance with the statutory terms. 11 U.S.C. § 524(c).[2]

Reaffirmation agreements do not spring into being fully formed, like Venus from the waves. A creditor's willingness to enter into a reaffirmation agreement is certainly an effort on its part to collect or recover a claim. There is a obvious conflict between a strict reading of § 362 and the provisions relating to reaffirmation. *Bessette v. Avco Financial Services, Inc.*, 240 B.R. 147, 157 (D.R.I.1999).

As Judge Hand reminds us, however,

> Of course it is true that the words used, even in their literal sense, are the primary, and ordinarily the most reliable, source of interpreting the meaning of any writing: be it a statute, a contract, or anything else. But it is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary; but to remember that statutes always have some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning.[3]

 It is necessary that we attempt to reconcile the strict language of the automatic stay with the existence of reaffirmation agreements. As our circuit court has stated,

> The "plain meaning" of statutory language controls its construction. But the meaning, or "plainness", or discrete statutory language is to be gleaned from the statute *as a whole*, including its overall policy and purpose. "Literal" interpretations which lead to absurd results are to be avoided.[4]

2. Reaffirmation of debts in bankruptcy proceedings is a fairly new development in bankruptcy law, arising in close to its present form only in the Bankruptcy Code of 1978. For the prior history of reaffirmation, *see In re Oliver*, 99 B.R. 73, 75 (Bankr.W.D.Okla.1989).

3. *Cabell v. Markham*, 148 F.2d 737 (2nd Cir. 1945), *aff'd sub nom. Markham v. Cabell*, 326 U.S. 404, 66 S.Ct. 193, 90 L.Ed. 165 (1945).

4. *Summit Investment & Development Corp. v. Leroux*, 69 F.3d 608, 610 (1st Cir.1995) (emphasis in original; citations omitted). *See also Bessette* at 157. (noting that it is critical to read the Bankruptcy Code as an integrated process).

■ A creditor must be allowed some form of interaction with the debtor in the creation of reaffirmation agreements, and to that extent the absolute bar of § 362(a)(6) must yield. "The option of reaffirming would be empty if creditors were forbidden to engage in any communication whatsoever with debtors who have pre-petition obligations." *In re Duke,* 79 F.3d 43, 45 (7th Cir.1996). *See also In re Briggs,* 143 B.R. 438, 450–451 (Bankr. E.D.Mich.1992)(same); *In re French,* 185 B.R. 910, 912 (Bankr.M.D.Fla.1995)(reaffirmation contemplates negotiation of terms between the parties). The purpose of the communication between the parties is to reach a consensus as to the terms of any reaffirmation:

> Implicit in the statute's repeated references to an "agreement"-the word is used no less than eighteen times in section 524(c)-is the requirement that the creditor as well as the debtor consent to the reaffirmation. Fundamental to the concept of an agreement is an expression of mutual assent between the two (or more) parties to that agreement.

*In re Turner,* 156 F.3d 713, 718 (7th Cir. 1998). *See also General Motors Acceptance Corp. v. Bell (In re Bell),* 700 F.2d 1053, 1056 (6th Cir.1983)(same); *In re Pendlebury,* 94 B.R. 120, 121 (Bankr.E.D.Tenn.1988)(reaffirmation contemplates voluntary postpetition agreement between debtor and creditor).

■ However, not all communications can be permitted. For example, a letter sent by a creditor post-petition asking the debtor to reaffirm—a mere request for repayment which is non-threatening and non-coercive—is not barred by the provisions of § 362(a)(6). *In re Duke,* 79 F.3d 43, 45 (7th Cir.1996) and cases cited therein.

■ Once the lines of communication have been opened, the parties are at liberty to discuss the terms of the contemplated reaffirmation. We agree with the cases which hold that the parties must concur in the desire to reaffirm and that the creditor could simply decline to agree to reaffirmation. *Brown v. Pa. State Employees Credit Union,* 851 F.2d 81, 86 (3rd Cir.1988). "A creditor is under no statutory duty to enter into an involuntary reaffirmation agreement and may decline for any reason whatsoever or for no reason, if the refusal in no way violates rights conferred upon a debtor...." *Green v. National Cash Register Co. (In re Green),* 15 B.R. 75, 77 (Bankr.S.D.Ohio 1981). Absent any extraneous considerations, the bankruptcy court cannot require either party to enter into a reaffirmation agreement. *In re Whatley,* 16 B.R. 394, 396 (Bankr.N.D.Ohio 1982). If we were dealing only with a single loan, KFCU's refusal would be appropriate. The ultimate question is whether the existence of the unsecured loans, and KFCU's "all or none" position on reaffirmation, creates a distinction from the basic rule rising in importance to a violation of the automatic stay.

The issue of tying agreement to reaffirmation of one secured debt to reaffirmation of additional unsecured debts has divided the courts. On facts close to those now before us, the court in *Green* held that refusing to execute a reaffirmation agreement unless the dischargeable unsecured debt be paid violates the automatic stay:

> A creditor is under no statutory duty to enter into an involuntary reaffirmation agreement and may decline for any reason whatsoever or for no reason, if the refusal in no way violates rights conferred upon a debtor, such as rights of redemption of personal property under Section 722 or freedom from government reprisals for seeking relief, under Section 525.

In this regard, we note that both the Section 362 stay and the Section 524(a)(2) injunction against "any act" pursued to collect a debt from the debtor or the debtor's property would prohibit any acts for collection of the unsecured debt herein, which is dischargeable. Refusing to execute a reaffirmation agreement unless the dischargeable unsecured debt be paid is such an act which violates the statutory rights of the debtor.

15 B.R. at 78.

On the other hand, it has been held that the practice is permitted:

> By requiring the Debtor to reaffirm his unsecured loan as a condition for acceding to reaffirmation of the secured loan, the Credit Union took an approach analogous to a creditor who refuses to allow reaffirmation of only the secured portion of a single, unsecured debt. Because a debtor does not have the right to compel a creditor to accept "partial" reaffirmation of an undersecured indebtedness, there would be nothing improper about that creditor stating up front that the debt could not be selectively reaffirmed. That fact that the Credit Union's policy encompassed two separate loans, instead of just one, does not call for a different conclusion.

*In re Briggs*, 143 B.R. 438, 460 (Bankr. E.D.Mich.1992) (citation omitted). *See*

*also In re Brady*, 171 B.R. 635, 639 (Bankr.N.D.Ind.1994); *Schmidt v. American Fletcher Nat'l Bank (In re Schmidt)*, 64 B.R. 226, 228 (Bankr.S.D.Ind.1986).

We do not agree that the two instances compared in *Briggs*—partial reaffirmation of a single debt and reaffirmation of multiple debts—are in fact analogous.[5] When a creditor holds the debtor's home hostage for the reaffirmation of unsecured, unrelated debts, it transcends the limited right of communication with the debtor permitted in connection with reaffirmation. It seeks to use an Archimedian lever to move unsecured, dischargeable debts, into a more beneficial status. It goes beyond discussions of the terms upon which the loan, standing by itself, could be reaffirmed. In so doing, it goes beyond negotiation of the terms of reaffirmation, and, in our view, impermissibly so. We hold that the action of KFCU conditioning reaffirmation of a residential mortgage loan upon reaffirmation of other unsecured obligations, and representing that, should the reaffirmation package not be approved, it would foreclose on Debtors' home, is both threatening and coercive and a violation of the automatic stay.[6] It is a willful violation. "The standard for willful violation of the automatic stay under § 362(h)[7] is met if there is knowledge of the stay and the defendant intended the actions which constituted the violation." *Fleet Mortgage Group, Inc. v. Kaneb*, 196 F.3d

---

**5.** We do agree that partial reaffirmation is not permitted. *In re James*, 120 B.R. 582 (Bankr. W.D.Okla.1990).

**6.** The present facts are a close parallel to *In re Guinn*, 102 B.R. 838 (Bankr.N.D.Ala.1989). In that case, the debtor also had secured and unsecured obligations to the credit union. He did not reaffirm certain unsecured debt to the creditor in what appears to have been a no asset case. The creditor terminated the debtor's membership in the credit union because he had caused a loss to it, refused to accept mortgage payments, and moved for

relief from stay to foreclose. The court held that the filing of the motion for relief from stay was of itself "harassive and, therefore, coercive and, thus, a violation of [the automatic] stay." *Id.* at 843.

**7.** "An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(h).

265, 268 (1st Cir.1999). Both factors are present here.

We therefore affirm the holding below that KFCU's actions constituted a violation of § 362(a)(6).

## II. Was the relief granted below within the authority of the bankruptcy court?

■ The relief granted by Judge Haines erased any default under the home mortgage (on condition that payments be brought current within twelve months), enjoined KFCU from withholding its consent to the reaffirmation of the mortgage on its original terms, approved the reaffirmation, and awarded counsel fees.

KFCU challenges primarily the ordered reaffirmation and injunctive relief. It contends that the remedy imposed goes beyond the powers of the bankruptcy court in two respects: generally in issuing injunctive relief as a remedy for violation of the automatic stay and more particularly in requiring KFCU to enter into a reaffirmation agreement as to the secured loan only.

■ Appellant is in error in contending that injunctive relief is not available as a remedy for violation of the automatic stay. While it is true that § 362(h) provides only monetary damages, and hence supports only the award of fees and costs by Judge Haines, "the bankruptcy court, as a court of equity exercising *in rem* jurisdiction over assets in its custody and control, can protect its jurisdiction by injunction, whether or not such power is expressly set forth." *Federal Deposit Insurance Corp. v. Shearson–American Express, Inc.,* 996 F.2d 493, 499 (1st Cir. 1993).

■ However, notwithstanding the broad language of § 105(a),[8] the equitable powers of the bankruptcy court are limited:

> Section 105(a) empowers the bankruptcy court to exercise its equitable powers-where "necessary" or "appropriate" -to facilitate the implementation of other Bankruptcy Code provisions.... Although expansively phrased, section 105(a) affords bankruptcy courts considerably less discretion than first meets the eye, and in no sense constitutes a roving commission to do equity....
>
> ....
>
> [T]he bankruptcy court may invoke section 105(a) only if the equitable remedy utilized is demonstrably necessary to preserve a right elsewhere provided in the Code.

*Noonan v. Secretary of HHS (In re Ludlow Hospital Society, Inc.),* 124 F.3d 22, 27, 28 (1st Cir.1997) (citations and internal quotations omitted).

■ It has been held that, prior to the addition of § 362(h) to the Bankruptcy Code in 1984,[9] the only sanctions for violations of the automatic stay were civil contempt proceedings under § 105(a) of the Bankruptcy Code. *Shadduck v. Rodolakis,* 221 B.R. 573 (D.Mass.1998). *See also Crysen/Montenay Energy Co. v. Esselen Assoc., Inc. (In re Crysen/Montenay Energy Co.),* 902 F.2d 1098, 1104 (2nd Cir.

**8.** "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to en-force or implement court orders or rules, or to prevent an abuse of process." 11 U.S.C. § 105(a).

**9.** Bankruptcy Amendments and Federal Judgeship Act of 1984, P.L. 98–353 § 304, 98 Stat. 333, 352.

1990).[10] It is settled in this circuit that bankruptcy courts are vested with contempt power. *Eck v. Dodge Chemical Co. (In re Power Recovery Systems, Inc.),* 950 F.2d 798 (1st Cir.1991). The procedural rules for dealing with such contempts are set forth in Fed. R. Bankr.P. 9020(b):

> Contempt committed in a case or proceeding pending before a bankruptcy judge...may be determined by the bankruptcy judge only after a hearing on notice. The notice shall be in writing, shall state the essential facts constituting the contempt charged and describe the contempt as criminal or civil and shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense.

Fed. R. Bankr.P. 9020(b)(*passim* ).

While the record does not indicate that either the parties or the court considered the application of Rule 9020(b), the procedural posture of this case—an adversary proceeding seeking sanctions for violation of the automatic stay tried on an agreed record followed by this appeal—is certainly the functional equivalent of the policy evidenced there.[11]

We next turn to the appropriateness of the relief granted.

The substance of Judge Haines' order is mandating that KFCU enter into a reaffirmation agreement of the secured loan on its original terms; all of the other provisions are simply in aid of that result.

We noted above that, absent any extraneous considerations, the bankruptcy court cannot require either party to enter into a reaffirmation agreement. The Order, quoted above, enjoined KFCU from "withholding its consent to the plaintiffs' reaffirmation of their mortgage obligation on its original terms." Judge Haines was applying an estoppel long known in equity:

> Equitable estoppel, in the modern sense, arises from the *conduct* of a party, using that word in its broadest meaning as including his spoken or written words, his positive acts, and his silence or negative omission to do anything. Its foundation is justice and good conscience. Its object is to prevent the unconscientious and inequitable assertion or enforcement of claims or rights which might have existed or been enforceable by other rules of the law unless prevented by [259] the estoppel; and its practical effect is, from motives of equity and fair dealing, to create and vest opposing rights in the party who obtains the benefit of the estoppel.

2 John Norton Pomeroy, Equity Jurisprudence 258 (1886) (footnote omitted).

Pomeroy relies heavily upon *Horn v. Cole,* 51 N.H. 287 (1868), which in turn traces the roots of the doctrine to even more ancient English cases.[12] The *Horn* court distinguishes legal from equitable es-

---

**10.** Similarly, it has been held that "civil contempt is the normal sanction for violation of the discharge injunction" under § 524(a)(2). *Bessette v. Avco Financial Services, Inc.,* 240 B.R. 147, 155 (D.R.I.1999).

**11.** For comparable situations, *see United States v. Lile (In re Lile),* 161 B.R. 788, 793 (S.D.Tex.1993), *aff'd in part,* 43 F.3d 668 (5th Cir.1994)(table) (trial before bankruptcy court provides the procedural protection required before assessment of punitive damages); *Williams v. United States (In re Williams),* 215 B.R. 289 (D.R.I.1997); *appeal dismissed,* 156 F.3d 86 (1st Cir.1998), *cert. denied,* 525 U.S. 1123, 119 S.Ct. 905, 142 L.Ed.2d 904 (1999) (a motion to preclude provides an effective forum in which to respond).

**12.** The antiquity of the principle avoids consideration of the questions of bankruptcy court equity jurisdiction noted in *Grupo Mexicano v. Alliance Bond Fund, Inc.,* 527 U.S. 308, 318, 119 S.Ct. 1961, 144 L.Ed.2d 319 (1999).

toppel and states that, as to the latter, "a party is not allowed to assert his strict legal right, because, in the circumstances of the individual case, it would be contrary to equity and good conscience." 51 N.H. at 290. It points out that "the circumstances out of which the question may arise are of infinite variety," *id.* at 292, and that the principle should be "liberally applied to suppress fraud and enforce honesty and fair dealing." *Ibid.*

Although somewhat unusual, we find that the sanctions imposed below were not inappropriate. Sanctions in a civil contempt proceeding are remedial. *Power Recovery* at 802. The effect of the Order is to reimpose the *status quo ante* as to the mortgage, which both protects the rights of the Debtors and leaves KFCU in the same position it would have held if the Debtors had never filed for relief under Title 11. A sanction achieving that result is well within the discretion afforded to a trial judge.

## III. Conclusion

We **AFFIRM** the decision below.