In re CENTURY ELECTRONICS
MANUFACTURING, INC., et
al., Debtors.

Nos. 01–40153 JBR to 01–40156 JBR.

United States Bankruptcy Court,
D. Massachusetts.

June 6, 2001.

George W. Tetler, III, Mark W. Powers,
Bowditch & Dewey, Worcester, MA, for
debtors.

Mary Grace Diehl, Troutman Sanders,
LLP, Atlanta, GA, for Arris Interactive,
LLP.

John J. Monaghan, Holland & Knight, LLP, Boston, MA, for Official Committee of Unsecured Creditors.

Patrick G. Waters, Gargill, Sassoon & Rudolph, LLP, Boston, MA, Guaranty Business Credit Corp.

### MEMORANDUM ON STIPULATION ON THE DEBTORS' MOTION TO RETURN CERTAIN GOODS AND APPROVE AGREEMENT FOR RELIEF FROM STAY

JOEL B. ROSENTHAL, Bankruptcy Judge.

This matter came before the Court on the Debtors' motion for authority to return certain goods to Arris Interactive, LLC ("Arris") pursuant to 11 U.S.C. § 546(h),[1] and to approve an agreement for relief from the automatic stay to permit Arris to offset its pre-petition claim against the Debtors with a pre-petition debt owing to the Debtor by Arris ("the Motion"). At the initial hearing, the Court allowed that portion of the Motion seeking relief from the stay for Arris to offset its claim and continued the hearing on the remainder of the Motion seeking authority to return goods. On the date of the continued hearing, all interested parties appeared having executed a stipulation on the remainder of the Motion ("the Stipulation"). After hearing the parties and reviewing the operative terms as explained and clarified on the record, the Court allowed the Stipulation at the hearing for the reasons set forth herein.[2]

In this instance, the Court finds itself on a seemingly untraveled road without so much as a single guidepost in sight, inasmuch as no other court appears to have interpreted the operative language of § 546(h) of the Bankruptcy Code ("the Code"). The Debtors seek to return inventory ("the Goods") to Arris that Arris supplied to the Debtors for the Debtors' use in fulfilling manufacturing orders Arris placed with the Debtors. In deciding whether to approve the return of the Goods, initially opposed by both the Debtors' secured lender, Guaranty Business Credit Corporation ("GBCC") and the Offi-

---

1. In October 1994, Congress amended § 546 of the Bankruptcy Code to add a subsection. In drafting that amendment, Congress designated the new language as subsection (g) and did so without repealing or redesignating the existing subsection (g). A codification note to the amendment indicates Congress likely intended to designate the new language as subsection (h). In the interest of clarity, all subsequent references and citations to the statutory language set out below will be to subsection (h) of § 546. The relevant subsection reads as follows:

   Notwithstanding the rights and powers of a trustee under sections 544(a), 545, 547, 549, and 553, if the court determines on a motion by the trustee made not later than 120 days after the date of the order for relief in a case under chapter 11 of this title and after notice and a hearing, that a return is in the best interests of the estate, the debtor, with the consent of a creditor, may return goods shipped to the debtor by the creditor before the commencement of the

   case, and the creditor may offset the purchase price of such goods against any claim of the creditor against the debtor that arose before the commencement of the case.
   11 U.S.C. § 546(h).

2. The Motion initially asked that the Debtors be permitted to return goods delivered prepetition by Arris to the Debtors in exchange for an offset by Arris in the amount of $1,455,621.42 against Arris' pre-petition claim against the Debtors. The Stipulation, on the other hand, provided that the Debtors would return the identified goods in exchange for $150,000.00 in immediately available funds, as well as an offset against Arris' pre-petition claim in the amount of $850,000.00, leaving Arris with an allowed unsecured claim against the Debtors of $605,207.42. The Stipulation further provided that Arris would place forecasted manufacturing orders with the Debtors so long as the Debtors met certain established criteria.

cial Committee of Unsecured Creditors ("the Committee"), the primary issue before the Court is whether the return of the Goods "is in the bests interests of the [Debtors'] estate." 11 U.S.C. § 546(h). In arguing that returning the Goods is in the best interests of the estate, the Debtors stated simply that Arris is the Debtors' largest customer, and as such Arris is central to the Debtors' reorganization prospects. The Debtors implied, and Arris confirmed that implication at hearing, that if the Debtors are not permitted to return the Goods and Arris is not permitted to offset its pre-petition claim against the Debtors, Arris may terminate its business relationship with the Debtors, allegedly dooming the Debtors' reorganization to failure. Regardless of whether the Debtors' analysis is accurate, the Debtors have offered no legal authority in support of the proposition that a return of inventory goods securing a secured lender's claim against the debtor to a significant "contra" customer solely to preserve the *possibility* of future business with that customer is in the best interests of the estate as required by § 546(h).

In its opposition to the Motion, GBCC conceded the importance of the Arris business to the Debtors, and it acknowledged Arris may well have set off rights to exercise. GBCC, however, claims a first priority lien in the Goods as collateral for its claim against the Debtors. GBCC's position is that nurturing the Debtors' relations with Arris is an insufficient basis for authorizing the resulting preference inuring to Arris under such an arrangement, and views the transaction as a conversion of its collateral for less than full value. To the extent Arris must give the Debtors fair consideration for the Goods, GBCC did not object. The Committee, in sharp contrast to the Debtors' predictions, forecasted a stormy future for the Debtors if the Court allowed the Motion. In support of this, the Committee predicts the arrangement might have resulted in GBCC's successful request for relief from the automatic stay for lack of adequate protection with the prospect of a resultant super-priority administrative claim, or the conversion of the Debtors' case, either of which would have been at the expense of the Committee and its constituents. The Committee also objected to Debtors' proposed preferential treatment of Arris in the absence of some other consideration flowing from Arris in exchange for the return of the Goods.

Lacking any case law on the matter, and since the plain meaning of the statute offers no guidance, the Court looked to the legislative history of the 1994 amendment adding subsection (h) to § 546 and found certain statements made during floor debates instructive as to the Congressional intent for enacting subsection (h). For example, in proposing subsection (h) as an addition to § 546, it was stated some debtors may be better off if they were permitted to make a consensual return of goods to a seller in order to offset their debts to that seller. Hearing, H.R. Comm. on the Judiciary, 102d Cong., 2d Sess, A & P Legis. Hist., P.L. 103–394 (August 5, 1992). Such an example of the scenario contemplated was a retailer's January return of Christmas goods to its supplier. *Id.* In such an instance, Congress expected the returning of the goods to benefit the estate because the goods were more valuable in the hands of the seller, and the reorganizing debtor would not be burdened with storing goods with no immediate value, thereby freeing storage and inventory space for more useful goods to be sold in the course of the debtor's reorganization. Additionally, the debtor would also enjoy a more immediate reduction of the claims asserted against it by creditors. *Id.* It was also noted that the provision was merely the codification of a recent practice

employed by bankruptcy courts in some of the larger retail bankruptcy cases, notably the Macy's, Carter Hawley, and Federated Department Stores bankruptcy cases. *Id.* Thus, it is plain to the Court that Congress intended subsection (h) to permit debtors to return goods to sellers in exchange for a dollar for dollar offset on the seller's claim, but only when the estate would reap a benefit above and beyond a simple claims reduction against the estate that in any circumstances other than 100% payment of all creditors could only be characterized as preferential to that seller.

■ To begin, the Court notes the Debtor bears the burden of proof on the issue of whether the proposed return is in the best interests of the Debtors' estate. The Debtors would have the Court adopt a standard whereby the Debtors' "business judgment" in returning the Goods controls the outcome of whether the return is in the best interests of the estate.[3] The Court's obligation to consider the impact of the return of the Goods on the entire estate belies this suggestion. As such, the Court rejects a "business judgment" rule as the proper standard under § 546(h) and instead adopts a standard requiring debtors to prove by a preponderance of the evidence that: (1) the goods sought to be returned were shipped to the debtor pre-petition; (2) the seller's claim against the debtor being offset by the return arose pre-petition; (3) the seller consents to the return of the goods, and; (4) that the return is in the best interests of the estate

inasmuch as the return assists in some way the debtor's reorganization efforts, or otherwise maximizes the value of the debtor's estate for the benefit of all creditors.

■ Applying the standard set forth above, absent the Stipulation, the Court was prepared to find the Debtors in this case failed to sustain their burden of proof on the last element above. For example, the Debtors' contention that Arris would have terminated relations with the Debtors if the Court did not approve the Motion might have been true. But, quite simply, that would not prove that allowing the Motion would benefit the estate. As GBCC and the Committee so aptly pointed out, Arris simply alluded to future manufacturing orders which the Debtors could fill, but it admittedly did not obligate itself to have the Debtors perform that work. In fact, it previously represented it did not intend to obligate itself to do so, at least not at that time. Permitting the transfer of GBCC's collateral to Arris without some commitment or contract by Arris to assist the Debtors' reorganization by sending the Debtors more business, or providing some other form of consideration from which the estate could benefit, would not have benefitted any party other than Arris. Absent such a commitment or other consideration, Arris would have been free to take back the Goods, recover 100% of its pre-petition claim against the Debtors by offset, and casually stroll away from the Debtors' case like the proverbial cat who ate the canary.

---

3. The Debtors also contend GBCC is adequately protected, and therefore the Court should allow the Motion because GBCC will suffer no harm by the return. While it is not before the Court at this time, and thus the Court expressly renders no decision on the matter, the Debtors' argument raises the issue of whether an "adequate protection" argument is even applicable to a motion brought under § 546(h). After all, nothing in the Code suggests, nor do the parties, that a "return" under § 546(h) constitutes a use, sale or lease of estate property for the purposes of § 363 of the Code. 11 U.S.C. § 363. Furthermore, adequate protection is discussed in the Code only in relation to seeking relief from the automatic stay, 11 U.S.C. § 362(d)(1), a trustee's proposed use, sale, or lease of estate property, 11 U.S.C. § 363(e), and the trustee's proposed use of post-petition credit, 11 U.S.C. § 364(d)(1)(B).

This Court was not prepared to permit the Debtors to gamble away the creditors' chance of some future payment, if. even only a dividend, particularly with a creditor whose commitment to assist in the preservation of the Debtors as a going concern was less than clear. Thus, this Court holds that, as a matter of law, in a chapter 11 reorganization case, a return of goods by the debtor under § 546(h) is not "in the best interests of the estate" when that return serves no other purpose than to reduce the claims against the debtor's estate and the debtor fails to show that the return will confer some other benefit on the estate or otherwise assist the debtor in its reorganization efforts.

Given the paucity of authority on this issue, the Court is inclined to briefly discuss some circumstances where the Court might find that a return of goods under § 546(h) is in the best interests of the estate. For example, in the pre- § 546(h) retail cases discussed in the legislative history to that section, and in similar cases since, it is the Court's experience that the return of those goods and the resulting offsets were also accompanied by the seller's commitment to make post-petition advances of other goods on credit to the reorganizing debtor. Such an arrangement benefits the debtor's estate because it not only permits the reorganizing debtor to shed stale or unsaleable goods, as well as the burden of storing and insuring those goods against loss until they become saleable again, but it also enables the debtor to continue with operations that may potentially create new assets to be used in payment of claims against the estate. Even in the case of a liquidating debtor, if that debtor could prove a return of unsaleable goods would result in a significant savings to the estate over the liquidation period, such as the reduction or elimination of rental expense for storage space, or insurance costs and the like, then it is possible the estate can realize some quantifiable benefit from the return of the goods. In a manufacturing case, such as the case *sub judice*, the contra creditor can assist a debtor's reorganization by contracting with the debtor for future orders, thereby conferring a benefit on the estate in return for the benefit of a 100% satisfaction of its pre-petition claim for the returned goods. Even if the seller reneges and takes that post-petition business elsewhere, the debtor in such an instance is still left with a possible contract claim against the seller that it might prosecute for the benefit of its other creditors. This is by no means, though, an exhaustive list of possible situations where a return of goods might be considered to be in the best interests of a debtor's estate.

■ With the filing of the Stipulation, though, the Court is persuaded that the return is in the best interests of the estate. The Stipulation immediately provides funds to be applied as adequate protection to GBCC, with the proviso that should GBCC be recharacterized as an undersecured creditor, those same funds may be reapplied, to the extent necessary, to GBCC's pre-petition claim. Such a provision assists the Debtors by staving off a secured creditor in order to give the Debtors time to make a bona fide effort at reorganization. Furthermore, the Stipulation provides that Arris will, given certain circumstances, make efforts to assist the Debtors' reorganization by directing manufacturing orders to the Debtors, thereby facilitating the creation of new assets for the benefit of the Debtors' estate. Whereby the Stipulation for the return of the Goods confers these and other benefits upon the estate, the Court finds the Stipulation allowing the return is in the best interests of the estate.

The Court addresses one additional matter. Though no allegation of such was

raised by any party in this contested matter, the Court cannot help but consider whether Arris's actions in connection with the Motion might have been in violation of the automatic stay imposed by § 362(a) of the Code. At hearing, Arris intimated it might withdraw its business from the Debtors and cast them adrift to reorganize without its post-petition business. In the Court's view, Arris coercively brandished the sword of this withdrawal, quite possibly to compel the Debtors to invoke a statutory remedy in its stead that would not otherwise be available to Arris were Arris to seek return of the goods. *See* 11 U.S.C. § 546(h) (conferring standing to seek return only on the trustee or the debtor in possession). While the Court appreciates that Arris ultimately came to an agreement with the other parties, Arris might have adopted the approach it took in joining the Stipulation sooner, rather than later, thereby saving time and expense for all. The Court cautions that an appellate panel in the First Circuit recently found similarly coercive creditor techniques to be a willful violation of the automatic stay, *see e.g., Katahdin Fed. Credit Union v. Jamo (In re Jamo)*, 262 B.R. 159 (1st Cir. BAP 2001), and further that this Court too is sensitive to tacit actions that might constitute willful violations of federal law.

For all the foregoing reasons, the Court finds that the return of the Goods under the terms set forth in the Stipulation is in the best interests of the estate in accordance with 11 U.S.C. § 546(h), and the Court therefore ALLOWS the Stipulation on the Debtors' Motion to Return Certain Goods and Approve Agreement for Relief From Stay.

SO ORDERED.